UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE FIDELITY LAND TRUST COMPANY,
LLC,

       Plaintiff,

v.                               Case No.  6:12-cv-1367-ORL-37TBS

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., and
HOMECOMINGS FINANCIAL NETWORK,
INC.,

       Defendants.

_____/

<u>REPORT AND RECOMMENDATION</u>

     This case is before the Court on the Defendants' Motion for Attorneys' Fees,

Costs and Sanctions.[1]  Plaintiff, The Fidelity Land Trust Company, LLC ("Fidelity")

has not filed a response to the motion and the time for doing so has expired.  For

the following reasons, I recommend that the Court grant the motion.

I.    Background

     The background of this case begins with non-party, Edward Cherry who has

engaged in willful, deceptive and unfair trade practices in violation of Chapter 501,

Part II, Florida Statutes (2007).[2]  The Office of the Attorney General, Department of

Legal Affairs, State of Florida (the "Attorney General") intervened in Case No. 08-

007686 CACE 08 in the Circuit Court of the Seventeenth Judicial Circuit in and for

_____

[1]Doc. 10.

[2]Doc. 10-2, Page 2.

Broward County, Florida to sue Cherry.[3]  That case culminated in a January 5, 2009

Consent Final Judgment Entering Injunctive Relief (the "Injunction"), in which

Cherry was permanently enjoined from:

> a. engaging in consumer-debt related services, whether secured or unsecured, including debt settlement services, debt management services, or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business or entity that is not a law office, law firm or engaged in the practice of law;

> b. representing and/or soliciting through advertisement and/or oral communication, either directly or indirectly, that they offer, provide or otherwise render consumer-debt related services, whether secured or unsecured, including debt settlement services, debt management services, or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business entity that is not a law office, law firm or engaged in the practice of law; and

> c. accepting, receiving or otherwise obtaining payment from consumers for consumer-debt related services, whether secured or unsecured, including debt settlement services, debt management services, or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business entity that js not a law office, law firm or engaged in the practice of law.[4]

On February 29, 2008, Chase Bank USA N.A. ("Chase") filed suit in the

United States District Court for the District of Delaware, Case No. 08-121-LPS-MPT

---

[3]Doc. 10-2, Page 2.

[4]Id.

against entities and persons related to Cherry.[5]  In an Order dated May 23, 2012, the District Judge adopted the Magistrate Judge's Report and Recommendation finding that at an unknown point in time Cherry began soliciting distressed consumers throughout the United States by representing himself as an expert in debt reduction and debt settlement.[6]  Consumers signed agreements with entities managed or controlled by Cherry and then began sending in monthly payments that were deposited into bank accounts controlled by Cherry.[7]  The funds were supposed to be used to pay the consumers' credit card debts and legal fees.[8]  Instead, Cherry disbursed more than $12 million to himself and others including his wife, former wife and brothers-in-law.[9]  Cherry also used more than $8 million to pay for illegal client solicitations.[10]  This resulted in Chase card members withholding payments on more than $75 million of outstanding debt owed to Chase.[11]

Fidelity is a Florida limited liability company.[12]  The Attorney General has alleged, in a lawsuit filed in the Circuit Court in and for Broward County, Florida, that Cherry, using the fictitious name "Edward C. Tudor," organized Fidelity and that

---

[5]Doc. 10-3, Page 2.

[6]Doc. 10-3, Pages 28-29.

[7]Id.

[8]Id.

[9]Id.

[10]Id.

[11]Id. at 30.

[12]Doc. 10-1, Page 2.

Cherry is a direct or indirect owner, manager, or person in control of Fidelity.[13]

According to the Attorney General, subsequent to January 1, 2011, Cherry and others caused false statements and promises to be made to consumers to induce them to transfer title to their homes to Fidelity for no consideration, pay Fidelity advance fees for services it could not deliver, and sign promissory notes secured by mortgages in favor of Fidelity.[14]  The Attorney General's complaint alleges that Fidelity solicited homeowners with the following false representations and promises:

> a.  Guaranteeing that [Fidelity] would avoid the homeowner's "upside-down mortgage" through actions pursuant to Chapter 65, Florida Statutes, so that at the end of a 120 day process the homeowner will have equity in the home;
>
> b.  Misrepresenting to homeowners that an assignment of mortgage is not good or effectual in law or equity against creditors or any subsequent purchasers unless the assignment of mortgage is recorded;
>
> c.  Misrepresenting to homeowners that the homeowner's mortgage is not enforceable against [Fidelity] as a subsequent purchaser for a valuable consideration, notwithstanding the fact that [Fidelity] do[es] not pay any consideration to the homeowner for the deed transfer of title; and
>
> d.  Misrepresenting to consumers that [Fidelity] (or [its] nominees) are bona fide transferees for value of the title of the mortgagors (the homeowners) so that the mortgagees' failure to record their assignments of mortgage under Chapter 701

---

[13]Doc. 10-4, Page 3.

[14]Id. at 7.

voids the homeowners' mortgages.[15]

On September 25, 2012, the state court found a substantial likelihood that the Attorney General will succeed on the merits of her allegations, and issued a temporary injunction against Cherry, Fidelity, and their co-defendants.[16]

Fidelity filed this case and a Notice of Lis Pendens in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Case No. 2012-CA-6727.[17] The lis pendens describes the property ("Property") located at 7962 Village Green Rd., Orlando, Florida 32818.[18] Its original Complaint sounded in three counts titled: "Declaratory Judgment Under F.S. § 695.01; Declaratory Judgment Under F.S. § 701.02; and Quiet Title."[19] Before any summonses were issued, Fidelity filed its First Amended Complaint in which it alleged that Rodney and Melanie Brown (the "Browns") previously owned the Property.[20] In or about January, 2006, the Browns mortgaged the Property to Defendant Homecomings Financial Network, Inc. ("Homecomings") to secure the repayment of a promissory note ("Note").[21] The Mortgage was recorded in the Public Records of Orange County, Florida and provides that Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"),

---

[15]Id.

[16]See Attorney Gen. v. Cherry, et al., No. 12-26987 (Fla. 17th Cir. Ct. Sept. 25, 2012) (order granting temporary injunction) (6:12-cv-01676-Orl-19DAB, Doc. 1-1 at p.3).

[17]Doc. 4-2, Page 31.

[18]Doc. 4, ¶ 4.

[19]Doc. 1-2.

[20]Docs. 1-2 and 4, ¶ 4.

[21]Doc. 4, ¶ 7.

in its capacity as the nominee for  Homecomings and Homecomings' successors and assigns, is the mortgagee.[22]

Fidelity alleged, on information and belief, that Homecomings sold the Note to an unknown party, thereby extinguishing Homecomings interest in the Mortgage.[23]  The unknown owner of the Mortgage failed to record a valid assignment of mortgage in the Public Records.[24]  The Browns subsequently quit claimed the Property to Fidelity as trustee in return for $10 and other considerations.[25]  After it acquired title to the Property, Fidelity sent a letter to both Defendants, requesting an estoppel letter and a date, time and location where the original Note could be inspected and photocopied.[26]  This request was ignored and the unknown owner of the Mortgage failed to intervene in the state court lawsuit within 30 days of the recording of the lis pendens.[27]

Fidelity alleged in Count I of this case that the Mortgage was unenforceable and had been extinguished pursuant to § 48.23(1)(d) Florida Statutes.[28]  The statute provides in part that a recorded notice of lis pendens operates as a bar to the enforcement against the property, of unrecorded liens unless the holder

---

[22]Docs. 4, ¶ 7 and 4-2, Page 5.

[23]Doc. 4, ¶ 8.

[24]Doc. 4, ¶ 9.

[25]Doc. 4-2, Page 2.

[26]Doc. 4, ¶ 10.

[27]Doc. 4, ¶¶ 10 and 15.

[28]Doc. 4.

intervenes in the pending lawsuit within thirty days after the lis pendens is recorded.

In Count II, Fidelity requested a declaratory judgment that the Mortgage was not good or effectual against Fidelity pursuant to § 695.01 Florida Statutes.[29]  This statute provides in part that a mortgage of real property is not effective against a subsequent purchaser for value, without notice, unless the mortgage is recorded according to law.  The statute also provides that a grantee under a quit claim is deemed to be a bona fide purchaser without notice.

Count III sought a declaratory judgment that the Mortgage was not good or effectual against Fidelity pursuant to § 701.02 Florida Statutes.[30]  This statute provides, among other things, that the assignment of a mortgage is not effective against creditors or subsequent purchasers who pay value and take without notice, unless the assignment is contained in a recorded document which indicates in its title, that it contains an assignment of mortgage.

Count IV asked the Court to quiet title to the Property in Fidelity.[31]  As grounds, Fidelity alleged that it was entitled to have the Mortgage cancelled because the owner had failed to intervene in this lawsuit within thirty days after the lis pendens was recorded and that after diligent effort, Fidelity was unable to ascertain the identity of the owner of the Mortgage.

The Defendants filed a motion to dismiss Fidelity's First Amended Complaint

---

[29]Id.

[30]Id.

[31]Id.

in state court and then removed the case to this Court pursuant to 28 U.S.C. § 1332 and § 1441.[32] Fourteen days later, Fidelity filed its Notice of Voluntary Dismissal Pursuant to FRCP 41(a)(1)(A)(i).[33] Now, the Defendants believe the Court should sanction Fidelity pursuant to 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, Florida Statute §57.105, and the Court's inherent power to impose sanctions.[34]

## II. Discussion

"[T]he Supreme Court [has] expressed strong support for the 'American Rule,' which prohibits the imposition of the prevailing party's attorneys' fees on an opponent except when authorized by statute or when a traditionally recognized exception is applicable."[35] "One such recognized exception is the so-called 'bad faith' exception. Under this exception, '[c]ourts have the 'inherent power' to assess attorney's fees as a fine . . . when a losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[36] In determining the existence of bad faith, the Court focuses primarily on the conduct and motive of the party rather than the

---

[32]Docs. 1 and 1-2.

[33]Doc. 8.

[34]Doc. 10.

[35]Cox Enterprises, Inc. v. News-Journal Corp., NO. 6:04-cv-698-Orl-28KRS, 2012 WL 2921013 *3 (M.D.Fla. July 16, 2012)
(quoting Woods v. Barnett Bank of Ft. Lauderdale, 765 F.2d 1004, 1014 (11th Cir. 1985) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)).

[36]Cox Enterprises, Inc. v. News-Journal Corp., 2012 WL 2921013 *3 (M.D.Fla.) quoting Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1543 (11th Cir. 1985) (quoting Alyeska Pipeline, 421 U.S. at 258-59.).

validity of its case.[37]  "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.  A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order."[38]  "If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith."[39]

Defendants' claim that this lawsuit was frivolous is borne out by an examination of Fidelity's First Amended Complaint and applicable law.  Section 48.23(1)(d) Florida Statutes applies to unrecorded interests in real property. Fidelity affirmatively alleged that the Mortgage was recorded in the Public Records and Fidelity did not claim that it had been satisfied.  Thus, based upon its own allegations, Fidelity took title to the Property subject to the Mortgage and there was no merit to Count I of its First Amended Complaint.  District Judge Whittemore reached the same conclusion in a similar case involving Fidelity: The Fidelity Land Trust Company, LLC as Trustee for Florida Land Trust No. 00160 dated January 20, 2012 v. Centex Home Equity Company, LLC. [40]

---

[37]Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1543 (11th Cir. 1985); and Rothenberg v. Security Mgmt. Co., Inc., 736 F.2d 1470, 1472 (11th Cir. 1984).

[38]Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (quoting Primus Automotive Fin. Servs., Inc., v. Batarse, 115 F.3d 644, 649 (9th Cir. 1977) (internal quotation and citation omitted).

[39]Barnes, 158 F.3d at 1214.

[40]The Fidelity Land Trust Company, LLC as Trustee for Florida Land Trust No. 00160 dated January 20, 2012 v. Centex Home Equity Company, LLC, ___ F.Supp.2d ___, Case 8:12-cv-2309-T-27TBM, 2012 WL 5383092 *1 (M.D.Fla. Nov. 1, 2012).

Fidelity's theory in Count II was equally without merit.  Section 695.01 Florida Statutes provides that a mortgage of real property is not effective against a subsequent purchaser for value, without notice, unless the mortgage is recorded according to law.  Fidelity alleged that the Mortgage was recorded in the Public Records and therefore, it had at least constructive notice.  However, we know Fidelity had actual notice as evidenced by its request for an estoppel letter and an opportunity to inspect the original Note.

Count II was also frivolous because § 695.01 applies to conveyances of real property.  The statute contemplates competing interests in real property, such as an unrecorded deed, and its effect on a subsequent purchaser for value. [41] The statute does not apply because the assignment of Mortgage (the document Fidelity complained was not recorded) was not a conveyance of real property, it simply reflected that the existing Mortgage was in new hands.[42]  Moreover, the identity of the mortgagee of the Property never changed.  The Mortgage, by its terms, declares that MERS is the mortgagee for Homecomings and its successors in interest.  The failure to record the assignment had no effect on Fidelity as a subsequent purchaser.[43]   Accordingly, Fidelity's claim that the Mortgage it was

---

[41] See Morris v. Osteen, 948 So.2d 821, 826-27 (Fla. 5th DCA 2007) (couching § 695.01 in terms of competing interests in land).

[42] United of Florida, Inc. v. Illini Fed. Sav. and Loan Ass'n., 341 So.2d 793, 794 (Fla. 2d DCA 1977).

[43] See In re Halabi, 184 F.3d at 1338 ("[A] subsequent assignment of the mortgagee's interest --- whether recorded or not --- does not change the nature of the interest of the mortgagor or someone claiming under him."

aware of became unenforceable because an assignment was not recorded
misconstrued the plain language of the statute and was, as Judge Whittemore held
in the <u>Centex</u> case, "frivolous."[44]

The Defendants filed the transcript of a January 5, 2012 hearing held in the
Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida,
Case No. 50-2011-CA-016163 in support of their motion.[45]  The plaintiff in that case
was attempting to defeat a recorded mortgage based upon §§ 48.23 and 701.02
Florida Statutes, the same claims made in Counts I and III of Fidelity's First
Amended Complaint in this case.[46]  Cherry attended the hearing in his role as
general partner in the managing partner of the plaintiff in the Palm Beach County
case.[47]   Also present, as counsel for the plaintiff, was attorney Howard Feinmel.
(<u>Id</u>. at 3).  Feinmel is counsel of record for Fidelity in the case currently before this
Court and he has represented Fidelity in at least four other cases.[48]  According to
the transcript, Cherry, who is not a member of the Florida Bar, drafted the complaint
in the Palm Beach case and Feinmel affixed his signature and Bar number to the

---

[44]<u>Id</u>.

[45]Doc. 10-6, Page 27.

[46]Doc. 10-6, Pages 18 and 23.

[47]<u>Id</u>. at 4.

[48]<u>See</u>, Case No. 8:12-cv-1930-EAK-MAP in the United States District Court, Middle District of
Florida; Case No. 12-08512-02 in the Circuit Court of the Seventeenth Judicial Circuit in and for
Broward County, Florida; Case No. 0:12-cv-61846-DMM in the United States District Court, Southern
District of Florida; and Case No. 2012-CA-939 in the Circuit Court for Leon County, Florida.

complaint.[49]  At the hearing, the trial judge, who had performed his own research, gave counsel copies of JP Morgan Chase v. New Millennial, LC, 6 So. 3d 681, 685 (Fla. 2nd DCA 2009) and explained the holding.[50]  In Millennial, the court, citing Kapila v. Atlantic Mortgage & Investment Corp. (In re Halabi), 184 F.3d 1335 (11th Cir. 1999), rejected the same argument based upon § 701.02 Florida Statutes that Fidelity made in this case.  By the time the state court hearing was over, both Cherry and Feinmel knew or should have known there was no merit to this claim which Feinmel subsequently included in Fidelity's Complaint and First Amended Complaint in this case.[51]

Count IV asked the Court to quiet title to the Property in Fidelity.  Because Fidelity had no grounds to bring its claims under §§ 48.23, 695.01 or 701.02 Florida Statutes, it did not have a lawful basis to quiet title to the Property.

There was no plausible basis in law for the filing of this action, which any competent, professional attorney would have known by reading the statutes and if that was not sufficient, reading the case law.  This is not a situation in which a lawsuit was filed in good faith and later discovery revealed that there was not a basis for it.  Fidelity's claims against Defendants were based upon legal theories that had absolutely no chance of success and which cannot be characterized as

---

[49]Id. at 9.

[50]Doc. 10-6, Pages 10-12 and 23-26.

[51]Id.; New Millennial, LC, 6 So.3d at 685-86 (Fla. 2d DCA 2009).

reasonable arguments to change existing law.  Based upon the findings in the

Injunction, the findings made by the United States District Court for the District of

Delaware, and the Attorney General's allegations against Cherry and Fidelity a

reasonable inference can be drawn that the real motivation for filing this lawsuit was

to further a plan or scheme to defraud the Browns and other consumers.

Fidelity was given an opportunity to defend against this motion and

demonstrate that there was a reasonable basis in law and fact for bringing this

lawsuit.  It chose not to.  The Court may conclude from Fidelity's failure to present

any evidence or argument in opposition to Defendants' motion that it has no

justification for filing this action.[52]

"Grounds for a bad faith award exist when a plaintiff brings a groundless suit

and forces the defendant to expend time and effort conducting his defense."[53]  The

exercise by the Court of its inherent powers to impose sanctions against Fidelity is

warranted because it brought a totally meritless lawsuit that caused Defendants to

spend time and money defending themselves.[54]  I recommend as a sanction that

Fidelity be ordered to pay Defendant's reasonable attorneys' fees and costs to

defend this action from the date they were served with original process through the

conclusion of this proceeding.  I do not recommend the imposition of sanctions

---

[52]Id. at 1214-15.

[53]Gordon v. Heimann, 715 F.2d 531, 539 (11th Cir. 1983).

[54]In re Medical One, Inc., 68 B.R. 150 (M.D.Fla. 1986); Jones v. International Riding Helmets, Ltd., 49 F.3d 692 (11th Cir. 1995);  Glass v. Pfeffer, 849 F.2d 1261 (10th Cir. 1988); Ortiz v. D& W Foods, Inc., 657 F.Supp.2d 1328 (S.D. Fla. 2009); and  Rothenberg v. Security Mgmt. Co., Inc., 736 F.2d 1470, 1472 (11th Cir. 1984).

against Feinmel because Defendants have not asked the Court to sanction him and he has not been given notice or an opportunity to defend himself.  The Court may however, wish to issue a rule to show cause to Feinmel.

I do not recommend the imposition of sanctions against Fidelity pursuant to Federal Rule of Civil Procedure 11(c) or § 57.105 Florida Statutes.  Both contain safe-harbor provisions requiring the moving party to serve the offending party with the motion at least 21 days before the motion is filed with the Court.  The moving party cannot file the motion if, within those 21 days, the offending party withdraws or corrects the challenged conduct.  Fed. R. Civ. P. 11(c)(2); Fla. Stat. § 57.105(4); see also In re Porto, 645 F.3d 1294, 1306 n.8 (11th Cir. 2011).  There is no evidence in this record that Defendants complied with the safe harbor requirements by serving Fidelity with their motion before they filed it with the Court.

I also do not recommend that the Court impose sanctions under 28 U.S.C. § 1927.  This section applies to conduct which multiples the proceedings.[55]  The moving party must show that: (1) counsel engaged in "unreasonable and vexatious" conduct; (2) counsel's conduct multiplied the proceedings, and (3) the sought sanction must equal the excess fees caused by the objectionable conduct.[56]  Case law holds that § 1927 does not apply to an initial complaint.[57]  Because Defendants seek to impose sanctions based upon Plaintiff's initial filing of this action, § 1927

---

[55]Peer v. Lewis, 606 F.3d 1306, 1314 (11th Cir. 2010).

[56]Id.

[57]Macort v. Prem, Inc., 208 F. App'x 781, 786 (11th Cir. 2006)

-14-

does not apply.

III.     Recommendation

Now, I respectfully **RECOMMENDED** that this Court:

(1)  Make a finding that Fidelity instituted and prosecuted this action in bad faith;

(2)  Grant the Defendants' motion for sanctions;

(3)  Exercise the Court's inherent power to sanction Fidelity; and as a sanction

(4)  Award Defendants their reasonable attorneys' fees and costs of this action.

Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal

**IN CHAMBERS** in Orlando, Florida, on December 4, 2012.

THOMAS B. SMITH
United States Magistrate Judge

-15-

Copies to:

      United States District Judge
      Counsel of Record